# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**MARGARET HENDRICKS o/b/o**
**PAUL HENDRICKS**                                          **2:14-cv-00439-SU**

                                                            **AMENDED**
                    **Plaintiff,**                          **FINDINGS AND**
                                                            **RECOMMENDATION**

**v.**

**CAROLYN W. COLVIN,**
**Commissioner, Social Security**
**Administration,**

                    **Defendant.**

**SULLIVAN, Magistrate Judge.**

Plaintiff Margaret Hendricks, on behalf of her deceased husband Paul Hendricks, seeks

judicial review of the final decision by the Social Security Commissioner ("Commissioner")

denying claimant's application for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("SSA"), 42 USC §§ 401-433, and claim for Supplemental Security Income

benefits ("SSI") under Title XVI[1]. This court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, that

---

[1]    Disability benefits are payable to claimant's wife as beneficiary. See 20 C.F.R. §
416.542(b); *Parra v. Astrue,* 481 F.3d 742 (9th Cir. 2007).

1 - AMENDED FINDINGS AND RECOMMENDATION

decision should be remanded  pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation

and payment of benefits.

## ADMINISTRATIVE HISTORY

Claimant  filed these applications on September 27, 2010.  Tr.  19, 202-15, 231.[2]  His

application was denied initially and on reconsideration.  On August 31, 2012, a hearing was held

before an Administrative Law Judge ("ALJ").  Tr. 35-71.  The ALJ issued a decision on

December 12, 2012, finding claimant  not disabled.  Tr. 19-28.  Therefore, the ALJ's decision is

the Commissioner's final decision subject to review by this court.  20 CFR §§ 404.981,

416.1481, 422.210.

## BACKGROUND

Claimant was born in 1960 and was 46 years old on his alleged disability onset date of

March 1, 2007.  Tr. 202.  He has a high school education and past relevant work experience as a

cook, a candy maker, a grounds caretaker, and a lodging attendant.  Tr. 67.  Claimant alleged he

was unable to work due to the combined impairments of "[s]eizures, confusion, short term

memory loss, [and] poor vision."  Tr. 231.   Claimant died on September 6, 2013.  The

immediate cause of death was Grand Mal Seizure Disorder.[3]  Other significant conditions

contributing to death included chronic alcoholism and noncompliance with medication.

---

[2]  Citations are to the page(s) indicated in the official transcript of the record filed on
April 11, 2014 (docket # 7).

[3]  Claimant's Opening Memorandum, (docket #10, p. 16) State of Oregon Certificate of
Death.  The court takes judicial notice of this public record as not subject to reasonable dispute.
Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## I.  <u>Medical Records</u>

The medical records accurately set forth Claimant's medical history as it relates to his claim for benefits.  The court has carefully reviewed the extensive medical record, and the parties are familiar with the records.  Accordingly, the details of the relevant medical records will be set out below.

## II.  <u>Testimony</u>

Claimant testified that he had 18 months of welding training, and was honorably discharged after three years in the United States Navy.  Tr. 45.  He worked nearly full-time for a few months in 2008 and 2009 pumping gas, and stopped because "I started falling down," and was having seizures.  Tr. 46-47.  He previously had multiple jobs as a line cook.  Tr. 47-49.

Claimant testified he was unable to work because he "would not be safe to other people because I never know when I'm going to fall down and when I fall down I fall straight down." Tr. 50.  The falls were caused by seizures.

The seizures started shortly after his close friend was murdered.  Tr. 51.  Claimant could not recall the date or year, but thought it was between 2004 and 2006.  Tr. 52.  Claimant described petit mal seizures where "I would find myself someplace that would be familiar to me but I wouldn't know how I got there or where I was at or - - I would have to call somebody on the phone or somebody walked by that recognized me and asked me what I was doing and...." *Id.* He did not know how long the seizures lasted, but has been told it is between three and five minutes, after which he was disoriented for 30 to 60 minutes.  Tr. 53-54.  Claimant would be anxious on unfamiliar territory and would leave to return to something familiar.  Tr. 55.

In approximately June 2007, claimant began having grand mal seizures during which

3 - AMENDED FINDINGS AND RECOMMENDATION

"I'm not sure what's going on exactly but I know just from what I've been told and how I feel when I get up that I must be in a tight ball...."  Tr. 52, 846.  Claimant fell, and he testified that he had broken his nose and fingers, bitten through his lip and tongue, and damaged his ear.  Tr. 53. He did not know how long the seizures lasted and "sometimes I come up out of those and I don't know where I'm at or what's going on and I've taken swings at people."  Tr. 55.  It could take all day to recover from a grand mal seizure.  He had more petit mal than grand mal seizures.  He has three to five seizures each week.  Tr. 57.  He had not driven in years.  Tr. 56.

Claimant stated he started drinking alcohol in high school, and had at times consumed one half case per day, but in the last two or three months had cut back to two beers a day.  Tr. 59. He continued to have the same frequency of seizures.  *Id.*  Claimant takes Gabapentin which helped keep him calm but did not decrease the frequency of the seizures.  He stopped taking the medication at times because of disorientation and confusion.  Tr. 60.  His memory was not good.

Claimant testified he did laundry and dishes and vacuums.  Tr. 62.  He padded the washer and dryer with towels in case he fell.  His family would not let him cook, and he wass generally with his daughter or son-in-law or wife.  The neighbors checked on him so he was never alone longer than two or three hours.  *Id.*  Sometimes he walked and became lost and disoriented and did not know how he got there.  Tr. 63.

He had a medical marijuana card and used marijuana when he couldn't sleep.  He took his prescribed medications, but had times when he did not take them because he did not think they were helping, and he got disoriented and failed to take the medication.  *Id.*

Vocational expert Deborah LaPointe testified that an individual with claimant's age, education and work experience who experienced unexpected seizures lasting anywhere from

4 - AMENDED FINDINGS AND RECOMMENDATION

three to five minutes followed by 30 to 60 minutes recovery break would be unable to sustain employment.  Tr. 70.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision  if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the

evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent

schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete

incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th

Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant

retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able

to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the

Commissioner to show a significant number of jobs exist in the national economy that the

claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir.

2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference

to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P,

appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).

### ALJ'S FINDINGS

At Step One the ALJ found claimant has not engaged in substantial gainful activity since

his March 1, 2007, alleged onset date. Tr. 21.

At Step Two the ALJ found claimant had the severe impairments of

seizure/pseudoseizure disorder, psychological in origin; posttraumatic stress disorder; alcohol

abuse and dependency, hypertension; and abnormal liver function. *Id.*

At Step Three the ALJ concluded claimant's impairments do not meet or equal the criteria

for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. Tr. 22.  The ALJ found claimant had the RFC to perform medium work, except  he could push and pull within the lifting restrictions, and he should avoid concentrated exposure to moving machinery and unprotected heights.  He could follow short, simple instructions and perform simple routine tasks, and he should have only superficial contact with the general public and co-workers.  Tr. 24.

At Step Four the ALJ concluded claimant was unable to perform any of his past relevant work.  Tr. 27.

At Step Five, the ALJ found there are jobs that exist in significant numbers in the national economy that claimant can perform, including auto detailer, hand packager, and housekeeping cleaner.  Tr. 28.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) finding claimant less than fully credible; (2) improperly weighing medical testimony; (3) improperly rejecting lay testimony; and (4) finding there were jobs that exist in significant numbers in the national economy that he could perform.

**I. Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008).  The ALJ's findings, however, must be supported by specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).  *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001).  Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason

for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify

the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.*

The evidence upon which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246

F.3d at 1208. General findings (*e.g.*, "record in general" indicates improvement) are an

insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See*

*also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the

claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must

perform two stages of analysis:  the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273,

1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability
> based on subjective symptoms "must produce objective
> medical evidence of an under-lying impairment which
> could reasonably be expected to produce the pain or
> other symptoms alleged." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799 F.2d at
> 1407-08. The *Cotton* test imposes only two requirements
> on the claimant:(l) she must produce objective medical
> evidence of an impairment or impairments; and (2) she must
> show that the impairment or combination of impairments
> *could reasonably be expected to* (not that it did in fact)
> produce some degree of symptom.

*Smolen,* 80 F.3d at 1282. *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160

(9th Cir. 2008).

The ALJ found claimant's statements as to the severity of his impairments less than fully

credible. Tr. 25.  The ALJ cited claimant's daily activities as inconsistent with his alleged

limitations, noting claimant did household chores and was injured playing softball.  Tr. 25, 430.

A claimant's participation in activities inconsistent with his alleged symptoms can be a sufficient

reason to discount his testimony.  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ noted claimant worked nearly full time for a period of time after his alleged

onset date. Tr. 25.   This is a valid reason to discount a claimant's credibility.  *Bray v. Comm'r*

*Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ noted claimant's noncompliance with treatment for his conditions.  Tr. 25.

Claimant repeatedly failed to attend diagnostic appointments and to take his medication as

prescribed.  Tr. 25, 425, 705.  The ALJ stated claimant would have made a better effort to attend

medical appointments and take medications as prescribed if his symptoms were as debilitating as

he alleged.  Tr. 25.  While there is some evidence regarding claimant's reasons for failing to take

medication, this is a valid reason to find claimant less than fully credible.  *Molina v. Astrue,* 674

F.3d 1104, 1113 (9th Cir. 2012).

Finally, the ALJ found discrepancies in claimant's reports as to the frequency of the

pseudoseizures which rendered him less than fully credible.  Tr. 25.  Claimant testified he had

three to five seizures per week, but July 2012 medical records reported that claimant said  he had

had six seizures in 20 days, some of which were more severe, which was about average for him.

Tr. 706.

While the record is replete with inconsistencies regarding the nature of claimant's

seizures, the effects of medical interventions and alcohol use, the ALJ's credibility determination

is supported by substantial evidence and should be affirmed.

10 - AMENDED FINDINGS AND RECOMMENDATION

**II.  Medical Opinions**

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1);

416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must

accord greater weight to the opinion of a treating physician than that of an examining physician.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a

treating physician because the person has a greater opportunity to know and observe the patient

as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the

ALJ should also give greater weight to the opinion of an examining physician over that of a

reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by

another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (Treating

physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).

Even if one physician is contradicted by another physician, the ALJ may not reject the opinion

without providing specific and legitimate reasons supported by substantial evidence in the record.

*Orn,*  495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of an nonexamining physician,

by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or

examining physician.  *Widmark,* 454 F.3d at 1066 n. 2.  The ALJ may reject physician opinions

that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*,

427 F.3d 1211, 1216 (9th Cir. 2005).

**A.  The Medical Evidence**

On May 9, 2012, Bayu Teklu, M.D., saw claimant for the first time.  Tr. 701.  He

requested a neurology consultation, stating:

> I am concerned and perplexed about his situation.  He was

> accompanied by his niece (who has a family of her own) but
> spends time taking care of him as well since lately he has not
> been safe due to more frequent seizures with falls and loss of
> consciousness. I also witnessed in clinic some of those seizures.
> All of a sudden his face became blank, [he] mumbled something
> and went down on the floor, looked intentional not to fall and
> injure himself, was up again but still he was not with it and went
> down again. He did that 3 times and finally sat in chair and
> started to talk. These mini seizures, niece says he may have
> them as many as 25 x a day. He also says he has the real grand
> mal type of seizures where he loses bowel and bladder control
> and bit his tongue. He still drinks 4 cans of 16 oz beer daily.

Tr. 701-02.

Claimant was referred for a 24 hour videotaped EEG and seizure monitoring which

occurred on May 22-24, 2012. Tr. 746-90. The Discharge Summary included:

> 51 y/o male transferred from Walla Walla, WA for spells, which
> have been increasing in frequency. Many of these events have
> been witnessed by other physicians who have documented them
> to be likely functional in nature. Patient endorses two types: 1)
> "Grand Mal Seizure" occurring 4x per month and less severe
> "seizures" that occur multiple times per day. Patient does endorse
> at least one time where he lost bowel/bladder function. However,
> mostly he typically has increased muscle stone, and blank stare
> and becomes unresponsive. For the smaller events, he says he is
> sometimes able to ward them off by distracting himself with
> finger tapping. At other times, he will be able to guide himself
> to the floor. However, he does state that he has fallen as a result
> of these events. There is little to no post-ictal state. He has had
> these spells for at least 7 years but his care has not been consistent
> due to poor follow up....On admission he visibly appeared intoxi-
> cated....He was placed in the epilepsy unit for continuous, 24 hour
> video-EEG monitoring. During the single evening he was in the
> hospital, he had multiple events, including one "Grand Mal
> Seizure." During any of these events, no electrographic correlate
> was observed on EEG. He did have some left temporal spikes at
> baseline, of unclear significance. However, it was determined
> that there was no epileptic activity....It was conveyed that while
> his spells are likely not volitional, that they also do not represent
> epileptic seizures. Given the patient's self-endorsement of

> anxiety, we asked him whether or not stress may be playing a
> role in his symptoms.  He indicated that he suffers from PTSD
> in the military, which may have been exacerbated by the recent
> events in his life.  We suggested he discuss this issue with his
> PCP and ask for a possible psychiatric referral.

Tr. 746-47.

On June 8, 2012, Paul Tiger, M.D., a psychiatrist, examined claimant.  Tr. 694-700.  Dr. Tiger noted claimant "screened positive for PTSD in relation to violent behavior he performed during the service."  Tr. 695.  Dr. Tiger stated that "[o]verall psychiatrically his situation could be described as dissociation or PTSD, although he resists the diagnosis because he thinks it would signify his 'weakness.'  However, whatever he is suffering is clearly disabling and has defied characterization and treatment, therefore I would be willing to assert that he has disabling symptoms that are psychological in origin." Tr. 698.  The diagnoses were PTSD, consider Dissociative Disorder; History of Panic Disorder; History of Psychosis NOS, and Dr. Tiger assessed a GAF of 35.  *Id.*

On June 14, 2012, claimant told Dr. Tiger his seizures were getting worse.  Tr. 709.  His family would not leave him alone because he might wander off.  Dr. Tiger assessed psychogenic nonepileptic seizures, Dissociative Disorder NOS, PTSD, history of Psychosis NOS and Panic with Agoraphobia.  Tr. 712.  The doctor wrote there "is really no psychiatric treatment algorithm for psychogenic seizures, and there is not clear evidence-base for treatment." *Id.*  He assessed a GAF of 42.  Tr. 711.

On June 15, 2012, Dr. Tiger completed a form in which he described claimant's symptoms as seizure like episodes with memory loss, loss of consciousness, disorganized behavior, wandering from home, and panic.  Tr. 685.  He opined that claimant would have to lie

13 - AMENDED FINDINGS AND RECOMMENDATION

down during the day, and noted that prescribed medications caused sedation. Claimant's

prognosis was guarded, and work on a regular and continuous basis would cause his condition to

deteriorate. Tr. 686. Dr. Tiger stated these limitations had existed since May 2006 "per patient

report," and commented that "this is a frequently disabling condition." *Id.*

On July 5, 2012, claimant reported to Dr. Tiger six seizures in the past 20 days. Tr. 707.

Dr. Tiger assessed Psychogenic Nonepilleptiform Seizures, and Dissociative Disorder NOS with

a GAF of 45. Tr. 709.

On July 12, 2012, claimant was evaluated by John D. Hughes, Ph.D. Tr. 705-06.

Claimant asserted that he did not have any health issues and has "a normal life." Tr. 705. Dr.

Hughes diagnosed PTSD, Dissociative Disorder, and Panic Disorder with Agoraphobia. Tr. 706.

In September 2012 Dr. Teklu completed a form in which he stated he had been

claimant's treating physician since May 2012 and that claimant had "pseudoseizures." Tr. 895.

Dr. Teklu noted these seizures were convulsive with loss of consciousness "by history." *Id.* The

doctor noted that he had witnessed one seizure, and that the average frequency of seizure

episodes would be seven to 14 per week. Stating that there were no positive EEG test results, Dr.

Teklu opined that stress could precipitate the seizures. Dr. Teklu indicated that his patient had

the associated mental problem of dissociative disorder. He opined that claimant would possibly

need unscheduled breaks in an eight hour work day. Tr. 896. He stated claimant would have

good days and bad days, and would miss four or more days per month of work "by history." *Id.*

Dr. Teklu stated claimant abused alcohol, but he could not tell whether his symptoms would

continue in the absence of alcohol abuse. *Id.*

**B.  The ALJ's Analysis**

The ALJ gave great weight to reviewing psychologist Kordell Kennemer, Psy.D.  Tr. 25. Dr. Kennemer reviewed the record and on December 3, 2010, determined that claimant had no restriction in activities of daily living, mild restriction in social functioning, and moderate limitations in concentration, persistence, and pace.  Tr. 78.  Dr. Kennemer found claimant capable of performing short, simple directions and tasks.

The ALJ gave great weight to the opinion of reviewing physician Richard Alley, M.D. Tr. 26.  Dr. Alley reviewed the medical record, and on December 15, 2010,  opined that claimant had the ability to occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk six hours in an eight hour workday, sit six hours in an eight hour workday, push and pull within lifting limitations, and should avoid concentrated exposure to hazards.  Tr. 79-80.

Both Drs. Kennemer and Alley issued opinions based on medical records received by November 3, 2010.  Neither reviewing physician had access to the records generated after that date.

The ALJ gave "little weight" to Dr. Tiger's opinion.  Tr. 26.  The ALJ noted that Dr. Tiger's opinion was based on only two examinations of claimant, and that most of Dr. Tiger's opinion was based on claimant's self-reports.  However, as plaintiff points out,  the Veterans' Administration medical records are electronic, and Dr. Tiger specifically noted he had reviewed the file and the EEG test results.  Tr. 694.  The ALJ stated that Dr. Tiger reported claimant was unable to work due to the unpredictable nature of his seizures.  The ALJ also noted claimant's inconsistent use of his medication as prescribed contributed to the unpredictability.  The ALJ also wrote:

> In addition, the possibility always exists that a doctor may express
> an opinion in an effort to assist a patient with whom he or she
> sympathizes for one reason or another.  Another reality, which
> should be mentioned, is that patients can be quite insistent and
> demanding in seeking supportive notes or reports from their
> physicians, who might provide such a note in order to satisfy
> their patient's requests and avoid unnecessary doctor/patient
> tension.  While it is difficult to confirm the presence of such
> motives, they are more likely in situations where the opinion
> in question departs substantially from the rest of the evidence of
> record, as in the current case.  The doctor's opinion is without
> substantial support from other evidence of record, which
> obviously renders it less persuasive.

Tr. 26.

However, the ALJ's speculation is not evidence that undermines Dr. Tiger's opinion. Moreover, the only evidence contradicting Dr. Tiger are the opinions of reviewing physicians Kennemer and Alley.

Dr. Teklu's September 2012 opinion was not before the ALJ, but was submitted to the Appeals Council.  The court must consider this evidence when determining whether substantial evidence supports the final decision of the Commissioner.  *Brewes v. Comm'r,* 682 F.3d 1157, 1163 (9th Cir. 2012).  Like Dr. Tiger, Dr. Teklu had access to the entire electronic medical record, and had observed claimant having a seizure.  Dr. Teklu agreed with Dr. Tiger that claimant's limitations would prevent employment.

On this record, the ALJ failed to identify clear and convincing or specific and legitimate reasons decision to reject the treating physicians opinion,  and the Commissioner's determination of the medical evidence should be found not supported by substantial evidence.

## III.  Lay Evidence

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. § 404.1513(d);

404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Friends and family members in a position to observe the claimant's symptoms and daily activities

are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-

19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give

 reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462,

1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a

germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon

the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694

(9th Cir. 2009).

After the hearing, Jacqueline Dee Curtsinger submitted testimony that she is claimant's

daughter and was with him at least four days a week for eight hours a day. Tr. 302-07. She

described a progression of increasing seizures since 2005, confusion, and memory loss.

The ALJ gave the lay testimony little weight. Tr. 26. The ALJ noted that Ms. Curtsinger

reported her father had on average one to two grand mal seizures per day, which is inconsistent

with the medical record. This is a valid reason to discount Ms. Curtsinger's opinion, and the

ALJ's determination on this issue should be affirmed.

## IV. Remand

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir.

2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been fully developed and the evidence

is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*  The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871,  876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)).  The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The Commissioner notes there is evidence that claimant used alcohol, and that "the claimant bears the burden of proving that his substance abuse is not a material contributing factor to his disability." *Parra v. Astrue,* 481 F.3d 742, 744-45 (9th Cir. 2007).  However, the ALJ did not find alcohol abuse material to Claimant's disability.  Tr. 24-28, 35-71.

The ALJ's rejection of Drs. Taklu and Tigers' opinions is erroneous for the reasons set out above.  The Vocational Expert testified that, if those opinions regarding unexpected seizures causing claimant to be unresponsive for three to five minutes, and requiring a break thereafter to recover, are credited, claimant would be unable to maintain employment.   Tr. 69-70.  Thus,

18 - AMENDED FINDINGS AND RECOMMENDATION

claimant should be found disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman,* 211 F.3d at 117.

## CONCLUSION

For these reasons, the court should **REVERSE** the decision of the Commissioner and **REMAND** this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

## SCHEDULING ORDER

The above Amended Findings and Recommendations will be referred to a United States District Judge for review.  Objections, if any, are due May 21, 2015.  If no objections are filed, review of the Findings and Recommendations will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendations will go under advisement on that date.

IT IS SO ORDERED.

Dated this 6th day of May, 2015.

_/s/ Patricia A. Sullivan_____
Patricia A. Sullivan
United States Magistrate Judge

19 - AMENDED FINDINGS AND RECOMMENDATION